UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

**SECURITIES AND EXCHANGE COMMISSION,**

    Plaintiff,

    v.

**RRBB ASSET MANAGEMENT, LLC, and CARL S. SCHWARTZ,**

    Defendants.

Civ. No. 20-12523 (KM) (ESK)

OPINION

**KEVIN MCNULTY, U.S.D.J.:**

    This is a civil enforcement action by the Securities and Exchange Commission against RRBB Asset Management, LLC, and its president, Carl Schwartz, for violations of securities laws. RRBB and Schwartz move to dismiss for failure to state claim, *see* Fed. R. Civ. P. 12(b)(6). (DE 12.)[1] For the following reasons, the motion is **DENIED**.

**I.   BACKGROUND**

    RRBB is a New Jersey company that managed investments on behalf of clients in exchange for fees. (Compl. ¶¶ 13, 21.) Schwartz was the person at RRBB who managed investments and did the trading. (*Id.* ¶ 23.) He controlled RRBB as its sole officer, direct 49% owner, and co-managing partner of an accounting firm that owned the remaining 51% of RRBB. (*Id.* ¶ 24.) The upshot

---

[1] Certain citations to the record are abbreviated as follows:

DE = docket entry

Compl. = Complaint (DE 1)

Mot. = RRBB and Schwartz's Brief in Support of their Motion to Dismiss (DE 12-1)

Reply = RRBB and Schwartz's Reply Brief (DE 19)

of this arrangement was that he received at least one-third of RRBB's profits. (*Id.* ¶ 27.)

The Commission alleges that Schwartz, and thereby RRBB, engaged in a "cherry-picking scheme" in which Schwartz allocated a disproportionate number of favorable trades (*i.e.*, trades that had a positive first-day return) to accounts held by a new client (a high-net-worth couple), and unfavorable trades (*i.e.*, trades that had a negative first-day return) to other clients. (*Id.* ¶ 30.) He executed this scheme by (1) trading in an omnibus account that allows one to buy and sell securities on behalf of multiple clients simultaneously, without identifying in advance the specific accounts for which a trade is intended, (2) seeing how securities performed throughout the day, and (3) (a) if the price of a stock rose on the purchase date, allocating that trade to the favored accounts, and (b) if the stock did not show profitability, allocating that trade to the disfavored accounts. (*Id.* ¶¶ 31–35.) The Commission performed a statistical analysis of Schwartz's trades to show that the return rates for the favored accounts were higher than those for the discovered accounts or other RRBB accounts. (*Id.* ¶¶ 49–53.) These trades occurred on an online platform provided by Charles Schwab & Co., Inc. (*Id.* ¶ 60.) Schwab, however, kicked RRBB off its platform based on concerns about cherry-picking. (*Id.* ¶¶ 61–63.)

Schwartz made such trades to induce the favored account holders to invest additional funds with RRBB. (*Id.* ¶ 39.) In an email to them, he stated, "If you notice, the only short term day trades that have been transacted in your account were gains. We do this for our aggressive clients." (*Id.* ¶ 43.) Nonetheless, in forms filed with the Commission, RRBB and Schwartz stated, "We will [] distribute a portion of the shares to participating accounts in a fair and equitable manner." (*Id.* ¶ 69.)

The Commission investigated whether those representations were true and then sued RRBB and Schwartz, asserting the following claims:

(1) fraud in connection with the purchase or sale of securities, in violation of § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5(a), (c);

(2) fraud in the offer or sale of securities, in violation of § 17(a)(1) and (2) of the Securities Act of 1933, 15 U.S.C. § 77q(a)(1), (2);

(3) fraud by an investment advisor, in violation of § 206(1) and (2) of the Investment Advisers Act of 1940, 15 U.S.C. § 80b-6(1), (2);

(4) failure to adopt and implement written policies and procedures reasonable designed to prevent violations of the Advisers Act, in violation of § 206(4) of the Act, 15 U.S.C. §§ 80b-6(4), and Rule 206(4)-7 thereunder, 17 C.F.R. § 275.206(4)-7; and

(5) false statements on Forms ADV, in violation of § 207 of the Advisers Act, 15 U.S.C. § 80b-7. (Compl. ¶¶ 85–106.)

The Commission seeks a permanent injunction, disgorgement, and civil penalties. (*Id.* ¶ 9.) RRBB and Schwartz move to dismiss. (Mot.)

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 8(a) does not require that a pleading contain detailed factual allegations but "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The allegations must raise a claimant's right to relief above a speculative level, so that a claim is "plausible on its face." *Id.* at 570. That standard is met when "factual content [] allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rule 12(b)(6) provides for the dismissal of a complaint if it fails to state a claim. The defendant bears the burden to show that no claim has been stated. *Davis v. Wells Fargo*, 824 F.3d 333, 349 (3d Cir. 2016). I accept facts in the complaint as true and draw reasonable inferences in the plaintiff's favor. *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (en banc).

Securities cases, however, often involve assertions of fraud, which Rule 9(b) requires be pleaded with particularity. *In re Burlington Coat Factory Secs.*

*Litig.*, 114 F.3d 1410, 1417 (3d Cir. 1997). To satisfy Rule 9(b), the plaintiff must plead "the who, what, when, where, and how of the events at issue." *U.S. ex rel. Bookwalter v. UPMC*, 946 F.3d 162, 176 (3d Cir. 2019) (citation omitted).

## III. DISCUSSION

The primary reason RRBB and Schwartz offer for dismissal is that the Complaint fails to allege scienter. For some of its claims, the Commission must indeed plead and prove scienter. *SEC v. Infinity Grp. Co.*, 212 F.3d 180, 191 (3d Cir. 2000) (§ 10(b) of the Exchange Act and Rule 10b-5); *Aaron v. SEC*, 446 U.S. 680, 697 (1980) (§ 17(a)(1) of the Securities Act); *ZPR Inv. Mgmt. Inc. v. SEC*, 861 F.3d 1239, 1247 (11th Cir. 2017) (§ 206(1) of the Advisers Act).[2] Scienter is a mental state "embracing an intent to deceive, manipulate, or defraud, either knowingly or recklessly." *In re Hertz Global Holdings Inc.*, 905 F.3d 106, 114 (3d Cir. 2018) (cleaned up). To establish scienter, the Commission may "either (1) identify circumstances indicating conscious or reckless behavior by defendants or (2) allege facts showing both a motive and a clear opportunity for

---

[2] Other claims do not require scienter but negligence. *Aaron*, 446 U.S. at 697 (§ 17(a)(2) of the Securities Act); *ZPR*, 861 F.3d at 1247 (§ 206(2) of the Advisers Act); *SEC v. Steadman*, 967 F.2d 636, 647 (D.C. Cir. 1992) (§ 206(4) of the Advisers Act). RRBB and Schwartz argue, in reply, that those claims should nevertheless be dismissed because the "entire Complaint is premised on an intentional scheme" and does not alternatively plead negligence. (Reply at 14.) Because I conclude that the Commission has adequately alleged scienter, I need not address any negligence-specific arguments. *See Infinity Grp.*, 212 F.3d at 192 (scienter is a more culpable mental state than negligence); *SEC v. Sason*, 433 F. Supp. 3d 496, 510 (S.D.N.Y. 2020) (allegations of scienter necessarily establish negligence); *cf. Gap Props., LLC v. Cairo*, Civ. No. 19-20117, 2020 WL 7183509, at *8 (D.N.J. Sept. 17, 2020) (the court has discretion to decline to consider issues raised for the first time in a reply brief).

Section 207 of the Advisers Act also does not require scienter, but does require a willful mental state. 15 U.S.C. § 80b-7. "[W]illfulness does not require intent to violate (or scienter), but merely intent to do the act which constitutes a violation." *SEC v. K.W. Brown & Co.*, 555 F. Supp. 2d 1275, 1309 (S.D. Fla. 2007) (citations omitted); *see also, e.g.*, *Vernazza v. SEC*, 327 F.3d 851, 860 (9th Cir. 2003). RRBB and Schwartz do not make any specific arguments regarding a failure to allege willfulness for the § 207 claim, so I do not consider that issue. *Yates Real Estate, Inc. v. Plainfield Zoning Bd. of Adjustment*, 404 F. Supp. 3d 889, 913 n.28 (D.N.J. 2019).

committing the fraud." *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1422 (3d Cir. 1997); *Gebhart v. SEC*, 595 F.3d 1034, 1040–41 (9th Cir. 2010) (applying same standards in enforcement actions by the Commission). The Commission need not allege scienter with particularity, but its factual allegations must support a plausible inference of scienter. *SEC v. Dubovoy*, Civ. No. 15-6076, 2016 WL 5745099, at *5 (D.N.J. Sept. 29, 2016) (citing *SEC v. McGee*, 895 F. Supp. 2d 669, 683 (E.D. Pa. 2012)); *see* Fed. R. Civ. P. 9(b) (mental states "may be alleged generally"). Here, the Commission adequately pleads scienter in two ways.

### A.  Allegations of a Knowing Scheme to Cherry-Pick

First, the Commission identifies circumstances indicating conscious or reckless behavior by alleging cherry-picking. Cherry-picking by its nature involves knowing conduct, because such a "scheme require[s] specific preparation and the deliberate allocation of a disproportionate number of profitable trades." *In re James C. Dawson*, Investment Advisers Act Release No. 3057, 2010 WL 2886183, at *5 (SEC July 23, 2010). In other words, cherry-picking itself is a knowing act. *SEC v. World Tree Fin. LLC*, Civ. No. 18-1229, 2021 U.S. Dist. LEXIS 22740, at *21 (W.D. La. Jan. 15, 2021), *appeal docketed*, No. 21-30063 (5th Cir. Feb. 3, 2021). In addition, cherry-picking involves an intent to defraud or deceive because "[b]y directing the more profitable trades toward preferred accounts, a securities professional is effectively stealing from one customer to enrich . . . other preferred customers." *In re The Dratel Grp., Inc.*, Exchange Act Release No. 77396, 2016 WL 1071560, at *1 (SEC Mar. 17, 2016). Thus, if the Commission's allegations raise an inference of cherry-picking, then those allegations also raise an inference of scienter. *See, e.g.*, *id.* at *11 ("Dratel controlled all of the trading and allocation decisions. Dratel therefore knew that he was trading in the same securities as his customers and that he was favoring his own account over theirs."); *SEC v. K.W. Brown & Co.*, 555 F. Supp. 2d 1275, 1307 (S.D. Fla. 2007) (finding scienter where "it was impossible for [defendant] not to know about the cherry-

picking scheme since he was doing the actual trading that constituted the cherry picking scheme").

The allegations here suffice to raise such inferences. "Determining whether cherry picking has occurred often requires drawing inferences from a pattern of behavior, irregularities, and trading data." *Dratel*, 2016 WL 1071560, at *2. Schwartz engaged in omnibus trading, yet the first-day return rates for the favored accounts were substantially higher than those for the disfavored accounts and all other RRBB accounts. (Compl. ¶¶ 49–53.)[3] This raises an inference that the trades, despite starting in an omnibus or block fashion, were allocated differently. It is plausible, then, that such differing returns were not the product of chance but choice. These irregularities tend to show cherry-picking and thus a knowing scheme. *Dratel*, 2016 WL 1071560, at *6–7; *SEC v. Strong Inv. Mgmt.*, No. 18-cv-293, 2018 WL 8731559, at *6 (C.D. Cal. Aug. 9, 2018).

Compounding the statistical allegations are Schwartz's emails and its removal from the Schwab platform. In an email to the owner of a favored account, Schwartz explained that "the only short term day trades" for that account "were gains" because RRBB "do[es] this for our aggressive clients." (Compl. ¶ 43.) Regardless of whether this a valid strategy (*see infra*), Schwartz evinced that he knew he was allocating gainful trades particularly to certain clients. Further, that Schwab removed Schwartz from its trading platform corroborates an inference of cherry-picking because one can infer that a firm like Schwab does not remove traders without some basis. Accordingly, these allegations further support an inference of cherry-picking and thus scienter.

In response, RRBB and Schwartz argue that the cherry-picking scheme is neither plausible nor pleaded with particularity.[4] Regarding plausibility, they

---

[3] My focus is on Schwartz's mental state because, as Defendants do not dispute, it can be imputed to RRBB. *SEC v. Cooper*, 142 F. Supp. 3d 302, 313 (D.N.J. 2015); *see Rahman v. Kid Brands, Inc.*, 736 F.3d 237, 246 n.14 (3d Cir. 2013).

[4] RRBB and Schwartz framed the Complaint's supposed failure to describe the cherry-picking scheme with particularity as a basis for dismissal separate from their

argue that the different allocations are based on client preferences. That is, some clients may want to see short-term gains while others will tolerate early negative returns in favor of improved longer-term performance. (Reply at 9–10.) It is true that statistical disparities can sometimes be explained by legitimate strategies. *See SEC v. Slocum, Gordon & Co.*, 334 F. Supp. 2d 144, 173 (D.R.I. 2004) (declining to impose liability in an alleged cherry-picking scheme because defendants explained, via testimonial evidence in a bench trial, how different trades represented a legitimate trading strategy). But this is not a determination I can make on the pleadings. Rather, to rule on the merits of a cherry-picking case requires consideration of a variety of evidence. *Strong Inv. Mgmt.*, 2018 WL 8731559, at *6 & n.2; *see Dratel*, 2016 WL 1071560, at *2 (explaining that "[c]herry picking is difficult to detect" and requires inferences from "a pattern of behavior, irregularities, and trading data"); *K.W. Brown*, 555 F. Supp. 2d at 1303–04 (relying on facts concerning "hundreds of trades" to determine liability for a cherry-picking scheme). At the moment, I only have the allegations in the Complaint and vague statements in RRBB's disclosures about their strategies. This is enough to raise an inference of cherry-picking, at least at the pleading stage.

Next, RRBB and Schwartz argue that the statistical analysis does not meet Rule 9(b)'s particularity requirement because the Commission does not explain its methods or provide details. (Reply at 12.) Such allegations are not required. The Commission alleges "the who, what, when, where, and how of the events at issue." *Bookwalter*, 946 F.3d at 176 (citation omitted). The Commission alleges that Schwartz (the who), used an omnibus trading account to allocate trades unevenly (the what, how, and where), over a certain time period (the when). That is sufficiently particular to describe the nature of the scheme, and the statistics back it up. *Strong Inv. Mgmt.*, 2018 WL 8731559, at *6. Further, the Complaint includes allegations regarding Schwartz's emails

---

argument regarding scienter. (Mot. 16–18.) But these arguments collapse into one because sufficient allegations of a cherry-picking scheme can establish scienter.

7

concerning certain accounts and Schwab's removal of him during the same period. Defendants cannot seriously contend that they lack "notice of the precise misconduct with which [they are] charged." *Bookwalter*, 946 F.3d at 176 (citation omitted). Rule 9(b) does not require elaboration on the Commission's methodology or further details, which can await discovery, if and as appropriate.

Accordingly, the Commission has adequately alleged scienter because the Complaint provides allegations of a cherry-picking scheme, with the requisite particularity.

### B. Motive

RRBB and Schwartz train most of their fire on the Commission's failure to allege a motive that could give rise to an inference of scienter. (Mot. at 11–14.) But "it is not necessary to plead motive to establish that a defendant acted with scienter." *Rahman v. Kid Brands, Inc.*, 736 F.3d 237, 245 (3d Cir. 2013). Provided that scienter is present, it matters not whether the defendant is a plotting Lady Macbeth or a motiveless Iago. The Commission's allegations establish a conscious scheme indicative of scienter, so allegations of motive and opportunity are unnecessary. Nonetheless, to refine the issues going forward, I explain why RRBB and Schwartz's arguments regarding motive are unpersuasive.

RRBB and Schwartz argue that, in a typical cherry-picking case, the Commission shows scienter by alleging that benefits of the scheme went to the defendant, who allocated the profitable trades to himself. (Mot. at 11–12.) Here, Defendants argue, the allocations occurred among clients, so RRBB and Schwartz's only benefit was management fees, which some courts have held is insufficient because investors generally have a motive to net such fees. (*Id.* at 12 (citing, *e.g.*, *Edison Fund v. Cogent Inv. Strategies Fund, Ltd.*, 551 F. Supp. 2d 210, 227 (S.D.N.Y. 2008)).) This argument fails for three reasons.

First, RRBB and Schwartz rely exclusively on out-of-Circuit, inapposite precedent. Their proposed rule that, as a matter of law, management fees

8

cannot establish motive, has not been adopted by the Third Circuit or any court in this District.

Second, I doubt that the proposed rule, whatever its validity, applies here. Nearly all the cases from which RRBB and Schwartz derive the rule were private securities actions. Those actions, by statute, are subject to a higher pleading standard than actions by the Commission. *SEC v. Lucent Techs., Inc.*, 363 F. Supp. 2d 708, 717 (D.N.J. 2005); *see also SEC v. Papa*, 555 F.3d 31, 35 n.1 (1st Cir. 2009); 5A Charles Alan Wright et al., *Federal Practice & Procedure* § 1301.1 n.11 (4th ed. Apr. 2021 update) (collecting cases). A private litigant must allege a "strong inference" of scienter, that is, the inference "must be more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007). In such cases, courts have held that—generally—generic motives possessed by all corporate officers do not support a strong inference of scienter. *GSC Partners CDO Fund v. Washington*, 368 F.3d 228, 237 (3d Cir. 2004).[5] The reasoning is that a motive shared by all officers is consistent with lawful behavior, so an inference of scienter is not "at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs*, 551 U.S. at 314.[6] From that, some courts have

---

[5] Despite this holding, there are no hard-and-fast rules for pleading motive in the private securities litigation context. *See Tellabs*, 551 U.S. at 325 ("[T]he significance that can be ascribed to an allegation of motive, or lack thereof, depends on the entirety of the complaint."); *Instit. Inv. Grp. v. Avaya, Inc.*, 564 F.3d 242, 269 (3d Cir. 2009) (establishing motive "will ultimately rest not on the presence or absence of certain types of allegations").

[6] There appears to be only one case where a court applied the management-fees rule to an action by the Commission. *SEC v. Yorkville Advisors, LLC*, 305 F. Supp. 3d 486, 513 (S.D.N.Y. 2018). Notably, the court had previously denied a motion to dismiss, so the case is procedurally inapt here. *SEC v. Yorkville Advisors, LLC*, No. 12 Civ. 7728, 2013 WL 3989054 (S.D.N.Y. Aug. 2, 2013). Regardless, I respectfully disagree with the *Yorkville Advisors* holding. That court, quoting from an opinion in a private action, stated that "[t]o accept a generalized allegation of motive based on a desire to continue to obtain management fees would read the scienter requirement out of the statute." 305 F. Supp. 3d at 513 (quoting *Edison Fund*, 551 F. Supp. 2d at 227).

held, when all officers stand to receive management fees, there is no strong inference of scienter. *E.g.*, *Edison Fund*, 551 F. Supp. 2d at 227. *But see In re Reserve Fund Secs. & Derivative Litig.*, 732 F. Supp. 2d 310, 321 & n.7 (S.D.N.Y. 2010) (explaining that courts are divided on the issue).

But if the Commission need only plausibly plead scienter, then a desire to garner management fees, or additional management fees, should suffice for a motive. While it is true that such a desire could be consistent with lawful behavior, the Commission's pleadings need not eliminate "nonculpable explanations for the defendant's conduct"; that requirement is unique to private actions. *Tellabs*, 551 U.S. at 324. The question in this case then becomes much simpler: did Schwartz have a motive to allocate trades disparately? The answer is yes; he could profit handsomely off of such trades. That should be sufficient at this stage.

Third, even if I applied RRBB and Schwartz's preferred case law, the Commission has adequately alleged motive. Courts have held that management fees can be a sufficient motive if the defendant has a "unique incentive" to obtain them or "a personal financial stake." *Reserve Fund*, 732 F. Supp. 2d at 321 (citations omitted). Here, Schwartz was no ordinary officer or manager. Rather, he owned 49% of RRBB, and received one-third of RRBB's profits. Thus, increased fees represented "a concrete and personal benefit" to *him. Id.* (citation omitted). Further, he favored certain accounts, inferably because he knew these high-net-worth clients would then be motivated to continue using his services. In addition, he had special fiduciary duties, which he skirted. These facts take this case beyond generalized allegations of motive.

In sum, the Commission's allegations of motive, to the extent such allegations are require, are sufficient.

## IV.  CONCLUSION

For the reasons set forth above, the motion to dismiss is denied.

---

But the statutory requirement referenced, requiring litigants plead a "strong inference" of scienter, does not apply to actions by the Commission.

A separate order will issue.

Dated: July 20, 2021

/s/ Kevin McNulty

_____

**Hon. Kevin McNulty
United States District Judge**

11