

DLA Piper LLP (US)
51 John F. Kennedy Parkway
Suite 120
Short Hills, New Jersey 07078-2704
www.dlapiper.com

Marc A. Silverman
marc.silverman@us.dlapiper.com
T  973.520.2550
F  973.520.2551

February 25, 2022
*Via ECF*

Hon. Magistrate Judge Edward S. Kiel
United States District Court
District of New Jersey
Martin Luther King Building & U.S. Courthouse
50 Walnut Street
Newark, New Jersey 07101

Re: *Securities and Exchange Commission v. RRBB Asset Management, LLC, and Carl S. Schwartz*, Case No. 2:20-cv-12523-KM-ESK

Hon. Hon. Magistrate Judge Kiel:

We represent defendant Carl S. Schwartz in the above-referenced matter, and write jointly with RRBB Asset Management, LLC ("RRBBAM") (together "Defendants") pursuant to Your Honor's Civil Case Management Order Rule 7 and Local Rules 16.1 and 37.1, to identify a discovery dispute related to a subpoena the SEC issued to TD Ameritrade on January 3, 2022 (the "TD Subpoena").  Defendants respectfully request a conference, or, in the alternative, Defendants request leave to file a motion for a protective order under Rule 26.  The Plaintiff Securities and Exchange Commission ("SEC") opposes Defendants' request, and its position is set forth in Section IV of this letter.

**I.      The TD Subpoena**

The SEC issued a Subpoena to TD Ameritrade on January 3, 2022 (the "TD Subpoena").  On or about January 21, 2022, TD produced documents to the SEC.  The SEC did not provide notice to Defendants that it had issued the TD Subpoena, or provide copies of the documents produced, until February 7, 2022.[1]  At that time, Mr. Schwartz's deposition was scheduled for February 10, 2022, and the SEC indicated that it intended to use those documents at his deposition.  Defendants objected to the late notice under Rule 45(a)(4) and the parties rescheduled Mr. Schwartz's deposition to March 3, 2022.  The parties subsequently requested, and the Court granted, an extension of fact discovery to March 4, 2022.  (ECF 48.)

---

[1] In Defendants' First Request for the Production of Documents to the SEC, Defendants requested that the SEC produce "all documents and communications concerning or relating to Defendants."  (Defs' First Requests for the Production of Documents No. 13.)



February 25, 2022
Hon. Magistrate Judge Edward S. Kiel
Page Two

**II.     Defendants Request, the SEC's Response, and Efforts to Resolve the Dispute**

On February 14, 2022, Defendants sent the SEC a letter identifying their objections to the TD Subpoena. (Ex. A.) The Defendants objected to the SEC's failure to comply with Rule 45(a)(4). The Defendants objected to the TD Subpoena because: (1) it sought information outside the time period of the events alleged in the Complaint; and (2) sought information as to accounts other than those referenced in the Complaint and sought the personal records of Defendants. Defendants requested that the SEC stipulate to exclude the documents received as a result of the TD Subpoena and any testimony predicated on those documents.

On February 14, 2022, the parties had a meet and confer. During the meet and confer and in a subsequent email, the SEC agreed that it would not use the personal trading records of Defendants, but would not agree to exclude any other documents. (Ex. B.)

**III.    Defendants' Position**

Discovery is not "unlimited" and a third-party subpoena is subject to the relevancy limitations in Rule 26. *See, e.g.*, *Costantino v. City of Atl. City*, No. 13 Civ. 6667 (RBK) (JS), 2015 WL 12806490, at *2 (D.N.J. Nov. 4, 2015). Under Rule 26, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Indeed, "while the standard of relevancy is a liberal one, it is not so liberal as to allow a party to roam in shadow zones of relevancy and to explore matter which does not appear germane merely on the theory that it might become so." *Costantino*, 2015 WL 12806490, at *2 (quoting *Claude P. Bamberger Int'l, Inc. v. Rohm & Haas Co.*, No. 96 Civ. 1041 (WGB), 1998 WL 684263, at *2 (D.N.J. April 1, 1998)). A court may issue a protective order against a subpoena that requests irrelevant information because, among others, "any effort" a party "expends on [] irrelevant records is undue." *See id.* at *3.

The TD Subpoena requested, and the SEC received, irrelevant documents for the following two reasons:

*Documents Outside the Time Frame of the Complaint*. The TD Subpoena requested documents throughout a "Relevant Period" that the SEC defines as the "beginning of January 1, 2017, to present." (Ex. C, TD Subpoena at Documents to be Produced ¶ 1; *id.* at Definitions ¶ 5.) Yet the SEC's Complaint alleges causes of action against Defendants based on alleged trading occurring between August 2016 and April 2017. (Compl. ¶¶ 1, 29.) Thus, the documents sought outside



February 25, 2022
Hon. Magistrate Judge Edward S. Kiel
Page Three

that time are irrelevant to the claims and defenses in this case as framed by the SEC's own pleadings.

The SEC claims that the documents outside the time frame of the Complaint are potentially relevant to rebut Defendants' explanations as to the trading. As explained in Defendants' motion to dismiss, certain clients may prefer long-term or short-term securities trading based on their individualized objectives, risk tolerance, time horizon, financial horizon, financial information, liquidity needs, and other various suitability factors. (ECF 12-1 at 5.) While this strategy includes long-term securities trading, the ultimate result of the trading is not relevant—what is relevant is the decision and individualized considerations *at the time* of the trading. (*See* ECF 12-1 at 2 ("Based on Defendants' assessment of a security's present value and expected future value, they assign the security to the portfolio of a client with compatible investment objectives and risk tolerance.").) Thus, the results of the trading after the time frame of the allegations in the Complaint are not relevant.[2]

*Documents Other Than Those Accounts Referenced in the Complaint.* The TD Subpoena requested "all trades" "for each personal, proprietary, or client account controlled by" Defendants. (Ex. C, TD Subpoena at Documents to be Produced ¶ 1.) The SEC's Complaint alleges causes of action based on alleged trading in a "Favored Account" and certain "Disfavored Accounts." (Compl. ¶ 30.) We understand the SEC's reference to "Favored Account" to refer to an account or accounts held by Robert and Diane Butters. We understand the SEC's reference to "Disfavored Accounts" to refer to accounts held, benefitting, or operated by Greta Roesch and Jane Tang. Yet the TD Subpoena sought all trades for accounts other than Butters, Roesch, and Tang, including the personal accounts of Defendants. Thus, the documents received as to any account other than Butters, Roesch, and Tang are irrelevant to the claims and defenses in this case.

The SEC claims that accounts other than the alleged Favored Account (Butters) and the alleged Disfavored Accounts are relevant because Defendants allegedly "allocate[d] less favorable trades

---

[2] The SEC's argument below misses the point. Whether Defendants "replicated" the trading patterns after April 2017 at TD has no bearing on the choices made for clients between August 2016 and April 2017 (the time frame of the Complaint). The innocent and truthful explanation that Defendants made trading choices for certain clients at one point in time are not proven or disproven by trading choices made later at a different point in time under different circumstances. As explained, the choices for each client are made on an individualized basis at a moment in time based on expectations of what might happen in the future and the client's current and expected needs. Choices made later in different circumstances are simply not relevant to the SEC's allegations. As a result, trading records outside of the time frame pleaded in the complaint do not tend to prove or disprove any fact at issue. *See* Fed. R. Civ. P. 26(b)(1).



February 25, 2022
Hon. Magistrate Judge Edward S. Kiel
Page Four

to RRBB's other clients." But that is not what the Complaint alleges. The Complaint alleges that Defendants were disproportionately allocating unfavorable trades to "a small group of RRBB's largest clients" and defines them as the "Disfavored Accounts." Compl. ¶ 30. The Complaint then identifies six disfavored accounts, associated with just two persons. *Id.* ¶¶ 46-48. Those two persons are Greta Roesch and Jane Tang. In response to Defendants' First Set of Interrogatories requesting that the SEC identify the Disfavored Accounts, the SEC produced and incorporated an Excel spreadsheet that identified the "Disfavored" accounts as six accounts associated with Greta Roesch and Jane Tang.[3] (Exhibit D at Response to 4 (the spreadsheet referenced contains sensitive financial information of nonparties and is therefore not being filed on the docket, but is available to the Court at its request.) The SEC should not be permitted to change its strategy at the 11th hour, disregard its own allegations in the Complaint and its own discovery responses so that it can speculate, and engage in a fishing expedition to unfairly expand the litigation to the prejudice of defendants. *See Schmulovich v. 1161 Rt. 9 LLC*, No. 07 Civ. 597 (FLW) 2008 WL 4572537, at *5 (D.N.J. Oct. 14, 2008) (finding information sought irrelevant where "Plaintiffs have asserted no allegations regarding them in this litigation."); *Costantino*, 2015 WL 12806490, at *2 (speculation and "fishing expedition" improper).

As a result of these infirmities, TD Subpoena is improper and the documents received should be excluded from evidence. Indeed, it is questionable that the SEC even believed these records were relevant because it did not issue this subpoena until after the December extension of fact discovery, which was only obtained due to the sudden and unexpected loss of a close family member of RRBBAM's counsel. During our discussion regarding that extension, we discussed and agreed that the only remaining discovery during the extension would be the depositions of Mr. Schwartz and a Schwab representative. As a result, absent that extension, the SEC would not have even been in position to seek or obtain these documents.[4]

---

[3] The SEC references just one paragraph from the Complaint, paragraph 56. But that paragraph states Defendants "allocated favorable trades to RRBB other accounts." (Compl. ¶ 56.) Nowhere in the Complaint, however, does the SEC state that there was a favorable account other than the single alleged Favored Accounts held by one couple. To the contrary, the Complaint alleges that the Defendants disproportionately allocated trades to "accounts held by a new client, a high net-worth couple." (Compl. ¶ 30.) That one "high net-worth couple" was Robert and Dianne Butters.

[4] Below, the SEC wrongly contends that Defendants lack standing to object to the TD Subpoena. *First*, the SEC's argument is inapposite because Defendants request leave to file a motion for a protective order under Rule 26—not to quash the subpoena under Rule 45. As even the cases the SEC cites acknowledge, it is well-established that a party has standing to seek a protective order under Rule 26 "regarding subpoenas issued to non-parties which seek irrelevant information." *Aetrex Worldwide, Inc. v. Burten Distrib., Inc.*, No. 13 Civ. 1140 (SRC), 2014 WL 7073466, at *4 (D.N.J. Dec. 15, 2014); *Costantino*, 2015 WL 12806490, at *3 ("The Court rejects Wheaten's



February 25, 2022
Hon. Magistrate Judge Edward S. Kiel
Page Five


**IV.    The SEC's Position**

The SEC inadvertently failed to serve Defendants with a copy of the subpoena issued to TD Ameritrade at the time it was issued, as required by Rule 45 of the Federal Rules of Civil Procedure, but any possible prejudice to Defendants was cured: first, by the SEC's production of TD Ameritrade's documents shortly after they were processed through the SEC's central processing unit ("CPU") in Washington, D.C., which is responsible for the processing of all incoming document productions; and second, by the SEC's agreement to continue the deposition of defendant Carl Schwartz, from February 10, 2022, to March 3, 2022, so as to allow whatever time Defendants' counsel needed to review the TD Ameritrade production.

It is also unfair for Defendants' counsel to suggest that the SEC took advantage of the repeated extensions of the scheduled date for the close of fact discovery to subpoena TD Ameritrade. Fact discovery in this case was originally set to close on August 27, 2021. Dkt. No. 18. Prior to the current discovery dispute, Defendants repeatedly requested extensions of the close of fact discovery, to which the SEC did not object. Dkt. No. 27, 36, 42, 44. None of those extensions prevented the SEC from conducting discovery.

With respect to the SEC's subpoena to TD Ameritrade, Rule 45(d)(3) provides that on a timely motion, the court for the district where compliance is required must quash or modify a subpoena that: (i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c); (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden.

---

standing argument. The Court does not accept the notion that a party can subpoena irrelevant documents in a case with impunity" and holding that a party can "move for a protective order in regard to a subpoena issued to a non-party which seeks irrelevant information"); *Gov't Emps. Ins. Co. v. Trnovski*, No. 16 Civ. 4662 (CCC), 2018 WL 5281424, at *3 (D.N.J. Oct. 23, 2018) ("Although the Court finds that the Alliance Defendants lack standing to quash the Subpoenas, the Court will nevertheless address whether the information that Plaintiffs seek is relevant under Rule 26."). *Second*, as even the cases cited by the SEC acknowledge, Mr. Schwartz has standing under Rule 45 because the SEC requested, and received, the "personal" accounts of Mr. Schwartz. *Corbi v. Marina Assocs.*, No. 08 Civ. 5875 (RBK) (JS), 2009 WL 10727983, at *1 (D.N.J. July 14, 2009) ("Since defendant is claiming that the requested records are confidential or private, it has standing to object to plaintiffs' subpoena."); *Schmulovich v. 1161 Rt. 9 LLC*, 2007 WL 2362598, at *2 (D.N.J. Aug. 15, 2007) ("Defendants assert a personal privilege with respect to their bank account records. Therefore, the Court finds that Defendants have proper standing to move to Quash subpoenas on their bank accounts.").



February 25, 2022
Hon. Magistrate Judge Edward S. Kiel
Page Six

  Defendants do not address, much less make a showing as to the applicability of any of these factors.  Generally, a motion to quash or modify a subpoena must be brought by the individual to whom it was directed.  *Gov't Emples. Ins. Co. v. Trnovski*, No. 16-4662 (CCC), 2018 U.S. Dist. LEXIS 182375, at * 7  (D.N.J. Oct. 23, 2018).  However, "a party has standing to bring a Motion to Quash or modify a subpoena upon a nonparty when the party claims a personal privilege in the production sought." *Id*.,quoting *Schmulovich v. 1161 R. LLC*, 2007 U.S. Dist. LEXIS 59705, 2007 WL 2362598 (D.M.J. Aug. 15, 2007); *see also Langford v. Chrysler Motors Corp*., 513 F.2d 1121, 1126 (2d Cir 1975) ("In the absence of a claim of privilege a party usually does not have standing to object to a subpoena directed to a non-party witness.").  In this regard, "[a] party lacks standing to challenge subpoenas issued to non-parties on the grounds of relevancy or undue burden. *Trnovski*, 2018 U.S. Dist. LEXIS 182375, at *7 (quoting *Univesitas Educ., LLC v. Nova Group, Inc*., 2013 U.S. Dist. LEXIS 1720, 2013 WL 57892 (S.D.N.Y. Jan. 4, 2013)).

  TD Ameritrade did not move to quash the subpoena, and Defendants assert no claim of privilege in the documents produced.  That should be the end of the matter, and any arguments Defendants may have regarding the relevancy of the TD Ameritrade records should left either to motions *in  limine* practice prior to trial, or to their making specific objections to whatever exhibits the SEC may list in its pretrial exhibit list.

  In any event, in support of their relevancy objection, Defendants mischaracterize the scope of the SEC's complaint and leave out important facts that demonstrate the relevancy of the SEC's subpoena to TD Ameritrade.  The SEC's complaint alleges that Defendants engaged in a fraudulent trade allocation practice, commonly called "cherry picking", in breach of their fiduciary duties to their advisory clients.  The SEC's statistical analysis shows that Schwartz disproportionately allocated profitable trades to accounts held by a new, high net-worth couple, who was one of RRBB's largest and most lucrative clients in terms of assets under management, while allocating less favorable trades to RRBB's other clients, and primarily to handful of long-term client accounts.  Contrary to  Defendants' assertion that this case only has to do with three client accounts, the SEC's statistical analysis is based on an analysis of their trading allocation practices with respect to all of RRBB's clients, on whose behalf Defendants traded in an omnibus trading account held by RRBB at Schwab.  And while the primary focus of the SEC's complaint is on the period from August 2016 to April 2017, when Defendants sought to benefit their new, high net worth client, the complaint further alleges that Defendants allocated a disproportionate share of unfavorable trades to accounts held by two elderly widows from approximately January 1, 2015 through August 11, 2016.  Dkt. No. 1, ¶ 56.



February 25, 2022
Hon. Magistrate Judge Edward S. Kiel
Page Seven

      The complaint further alleges that Defendants were kicked off Schwab's platform in April 2017, due to concerns about Schwart's use of RRBB's omnibus trading account, and Schwartz was told by a Schwab representative that it appeared he was engaging in cherry picking.  *Id*., ¶ 56.

      During the SEC's pre-filing investigation of this case, Schwartz offered a variety of innocent explanations to explain his trading allocation practices, none of which had to do with his ability to exploit RRBB's omnibus trading account at Schwab to engage in cherry-picking.  Once Schwab terminated RRBB, Defendants transferred their trading accounts to TD Ameritrade, where they were not able to use an omnibus trading account.  Accordingly, the purpose of the SEC's subpoena to TD Ameritrade is simple and straightforward:  were Defendants able to replicate their positive first day returns to the favored accounts, and negative returns to the disfavored accounts, consistent with their innocent explanations for their trading patterns on the Schwab platform, or whether that disparate performance was due to cherry picking.   That inquiry is indisputably relevant.   In addition, as with the SEC's statistical analysis of RRBB's trading at Schwab, its statistical analysis of RRBB's trading patterns at TD Ameritrade requires an analysis of all of RRBB's client accounts, not just the three accounts that Defendants' contend are the only ones at issue.

      For all the foregoing reasons, the SEC respectfully submits that Defendants' discovery dispute can be dispensed with on the basis of this letter.

      \*      \*      \*      \*      \*      \*

In light of these disputes, Defendants respectfully request a conference with Your Honor, or in the alternative, Defendants request leave to file a motion for a protective order under Rule 26.  In the event the Court denies leave, Defendants respectfully request a two-week extension to the current expert discovery and dispositive motion schedule (ECF 44) to allow Defendants time to consult with their expert regarding the information produced by TD.

Respectfully submitted,

<u>/s/ Marc A. Silverman</u>
Marc A. Silverman

cc:      All Counsel of Record via ECF